### A. Y. CREAGER CO. et al. v. HORTON et ux.

### No. 3424.

Court of Civil Appeals of Texas. El Paso.

Sept. 17, 1936.

J. F. Holt, of Sherman, and Renfro, McCombs & Kilgore, of Dallas, for appellants.

T. N. Roach, Jr., of Commerce, for appellees.

PELPHREY, Chief Justice.

The following findings of fact by the trial court sufficiently present the circumstances under which this cause arose:

"On or about the 28th day of March 1927, F. M. Horton and wife, Mary Horton, executed and delivered to A. Y. Creager Company a negotiable promissory note in the sum of $2500.00, payable November 1, 1937, bearing interest at the rate of 5½% per annum in accordance with interest coupons attached thereto, payable annually. Past due principal and interest bore interest at the rate of 10% per annum. A copy of the $2500.00 note, together with a copy of one of the interest coupons attached thereto will be found hereafter attached as an exhibit to the findings. All other interest coupons are similar except as to serial number and due date. The due date of interest coupons in the series was arranged so that interest at the rate of 5½.% per annum would be payable annually.

"At the same time and as a part of the same transaction, F. M. Horton and wife executed and delivered to A. Y. Creager Company 11 notes, the first one being for the sum of $14.58, and the remainder being each in the sum of $25.00. A copy of one of said notes is attached hereto as an exhibit. All other commission notes are exactly the same except as to due date. The 11 notes were arranged in series, one of said series being payable each year from November 1, 1927, to November 1, 1937. To secure the $2500.00 principal note, F. M. Horton and wife, Mary Horton, executed and delivered to F. W. Creager, Trustee, a deed of trust conveying certain land out of the James Grant survey in Hunt County. This deed of trust was filed for record on the 28th day of March, 1927, and is recorded in Vol. 158, page 401, deed of trust records of Hunt County. The 11 notes aggregating $264.58 were secured by another deed of trust executed by F. M. Horton and wife to F. W. Creager, Trustee, filed for record the 28th day of March 1927, and recorded in Vol. 158, page 403 of the deed of trust records, Hunt County. A copy of both first and second deeds of trust is attached hereto as an exhibit.

"Thereafter, A. Y. Creager Company transferred the principal note and the deed of trust securing it to the Harris Trust & Savings Bank by written transfer dated May 15, 1927, recorded in Vol. 159, page 267, deed records, Hunt County. The plaintiffs F. M. Horton and Mary Horton paid to A. Y. Creager Company the annual interest represented by the interest coupons attached to the principal note up to and including the interest coupon due November 1, 1933. All these payments were remitted by A. Y. Creager Company to the Harris Trust & Savings Bank. F. M. Horton and wife Mary Horton, also paid to A. Y. Creager Company seven of the second lien notes, one in the sum of $14.58 and the remaining six each in the sum of $25.00. The last note paid being due November 1, 1933. These payments were retained by A. Y. Creager Company.

"About the 1st of January 1934, F. M. Horton made application through the Hunt County Farm Loan Association for a loan with the Federal Land Bank of Houston to take up the $2500.00 note, in order to take advantage of the lower rate of interest. He applied to A. Y. Creager Company for a release of his notes and was told that the company would not release the second lien notes unless the four remaining second lien notes were paid. Later A. Y. Creager Company agreed that it would accept $90.00 in consideration of granting a release of the four remaining second lien notes. The Harris Trust & Savings Bank agreed to accept the $2500.00 principal, together with accrued interest from November 1, 1933, to the date of payment. F. M. Horton secured the Commitments from the Federal Land Bank and from the Land Bank Commissioner. The Federal Land Bank and the Land Bank Commissioner paid to Harris Trust & Savings Bank the sum of $45.83 and to A. Y. Creager Co. the sum of $90.00. Harris Trust & Savings Bank transferred the $2500.00 note to the Federal Land Bank and the Land Bank Commissioner. A. Y. Creager Company transferred the four second lien notes to the Land Bank Commissioner. These transfers were dated February 20, 1934, but they were not filed for record until June 8, 1934, and according to the testimony of F. M. Horton the money was actually paid on May 20, 1934."

On June 11, 1935, appellees filed this suit seeking to recover the sum of $750 alleging that the transaction was usurious and that they had paid interest in excess of 10 per cent. per annum in the years 1933 and 1934, amounting to $375. A. Y. Creager Company, A. Y. Creager, as owner and

operator of A. Y. Creager Company, and Harris Trust & Savings Bank of Chicago, Ill., were named as defendants.

Creager & Co. answered by general demurrer, general denial, denial of certain payments, and a plea of novation.

Harris Trust & Savings Bank alleged that it had no notice of the existence of the commission notes held by the Creager Company and that it had accepted only a lawful rate of interest in good faith and without notice that any sum was being paid to the Creager Company.

Upon a trial before the court he concluded that the $135.83 paid by the Federal Land Bank and Land Bank Commissioner, $45.83 of which went to the Harris Trust & Savings Bank and $90 to A. Y. Creager Company, exceeded 10 per cent. of the sum of $2,500 for the period from November 1, 1933, to May 20, 1934, and that usury had therefore been collected.

Based upon this conclusion, judgment was rendered against Harris Trust & Savings Bank for $91.66 and against A. Y. Creager and F. W. Creager, doing business as A. Y. Creager Company, for $180, and both parties have appealed.

### Opinion.

While the trial court has included the mortgage, deed of trust and interest coupons in his findings of fact, we do not consider them material to the disposition of this appeal.

This is a suit solely to recover the penalty provided for in article 5073, R.S., and the right of appellees to recover depends upon whether they paid to appellants more than 10 per cent. in one year for the use of the money borrowed. The items alleged in the petition are:

"On or about November 1st, 1933, as interest $137.50
On or about February 20th, 1934, as interest 137.50
On or about November 1st, 1933, as interest 25.00
On or about February 1st, 1934, as interest 90.00"

But the court found that the only usurious payments were those made through the Federal Land Bank and Land Bank Commissioner.

The findings of the court show that the $90 paid to A. Y. Creager Company was in consideration of the release of four second lien notes of $25.00 each which were not due at the time of such payment.

Article 5069, R.S., defines "interest" to be the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money, and it is here contended by appellants that the payment of the $90 to secure the release of the four notes for $25 each was not paid for the use, forbearance, or detention of the money borrowed by appellees.

With this contention we must agree. It appears without dispute and was found by the court in his findings of fact that the four notes were not due until November 1, 1934, 1935, 1936, and 1937; that the holder was not entitled to demand their payment until said dates; and the acceptance by the holder of $90 in payment of the four notes was to enable appellees to refinance their loan, at a reduced rate of interest.

As was said by the Supreme Court of North Carolina in a case where some notes were paid before their due date and a sum collected by the holder: "If defendant had a good investment, he had the right to hold on to it, and, if plaintiff desired to be released from his lawful and binding contract to pay interest until maturity of the debt, defendant had a right to exact payment of the $44 as compensation for such release. Defendant had as much right to sell his solvent debt at a premium to the plaintiff as to any one else. The defendant was called upon to surrender a perfectly good investment, untainted with usury and not for an extension of credit or forbearance, on an obligation the debtor could not meet. The transaction, as stated by plaintiff, is the very reverse of a loan, an extension of credit, or a forbearance, without which there can be no usury. It put an end to credit, instead of giving it." Smithwick v. Whitley, 152 N.C. 366, 67 S.E. 914, 915, 28 L.R.A.(N.S.) 113, 20 Ann.Cas. 1348.

This holding is approved by our Commission of Appeals in Vela v. Shacklett, 12 S.W.(2d) 1007, and we think should govern here. If we eliminate the $90 item from the interest the court found to have been paid, the sum paid would not exceed 10 per cent. and consequently no penalty could be collected.

Appellees have filed no brief, and we have not had the benefit of their views on this and the other phases of the case.

The judgment of the trial court is reversed, and judgment here rendered that appellees take nothing.